### THURMOND *et al.,* for use, etc., *v.* ALLGOOD.

1. When a written option, payable in several installments, for the purchase of land by persons who are to make the first payment "of their own means," provides that the first payment shall become due on a certain date, and, in the event the payment is not so made, the purchaser shall pay interest on it "and this agreement becomes void," and the option contains no words of assignability, such option is non-negotiable, and can not be enforced by a third person to whom it has been assigned by the original purchaser against the seller of the land.

2. The court did not err in directing a verdict for the defendant.

OCTOBER 13, 1915.

Equitable petition.    Before Judge Brand.    Walton superior court. November 9, 1914.

*Walker & Roberts,* for plaintiffs.

*R. L. Cox* and *Rogers & Knox,* contra.

HILL, J.   W. P. DeLaperriere filed his petition against J. M. Allgood, to compel specific performance of an option for sale of certain land by Allgood to Sam and Floyd Thurmond, which option, it was alleged, was afterwards transferred by the Thurmonds to DeLaperriere.   To the same term of court Sam and Floyd Thurmond also filed their petition against J. M. Allgood, praying that he be required to execute to them his bond for titles to the land, as agreed upon.   The two cases were consolidated and tried together.   The court directed a verdict for the defendant, and the plaintiffs excepted.

The controlling question in the case is whether the option, under its terms, was assignable.   The option is as follows (formal parts omitted) : "This agreement made and entered into this 10th day of September, 1912, by and between J. M. Allgood and Floyd and Samuel Thurmond (hereinafter referred to as Thurmonds), all of said State, witnesseth : That for and in consideration of the sum of one dollar in hand paid at and before the signing and delivery of these presents, the receipt whereof is hereby acknowledged, and of the stipulations hereinafter set out, the said Allgood hereby agrees to sell said Thurmonds all that tract or parcel of land [described], for the sum of $2,725.84, on the following conditions, to wit : That this agreement is to be considered and is only an option to buy on terms herein named, until the sum of $348.84 is paid on the principal sum of $2,725.84 above named by Dec. 1st, 1913.   When this $348.84 shall have been paid, the said Allgood agrees to execute a bond for title conditioned on payment of the balance of the purchase-money by said Thurmonds; the said balance to be paid as follows : $324 on Dec. 1st, 1914, $324.00 on Dec. 1st, 1915, $324.00 on Dec. 1st, 1916, $324.00 on Dec. 1st, 1917, $324.00 on Dec. 1st, 1918, $324.00 on Dec. 1st, 1919, $432.00 on Dec. 1st, 1920.   It is understood that deferred payments shall bear no interest before maturity.   In the event that said Thurmonds are unable to make the first payment of $348.84 on December 1st, 1913, of their own means, then they are to pay said Allgood $25.84 as interest on the first payment, and this agreement becomes void."

It will be observed that the option itself contains no express words authorizing the vendees to assign it.   The defendant's answer to the

petition denied that the plaintiffs had any right in the land in controversy. The testimony showed—indeed, it was admitted—that the Thurmonds had paid nothing to the defendant Allgood on the land, but that DeLaperriere, after the transfer of the option to him, offered to pay Allgood, on December 1, 1913, the sum of $348.84, the first payment due under the option, and demanded that Allgood execute to him bond for titles to the land in controversy. This offer was declined by Allgood, his insistence being that DeLaperriere had no right under the option by reason of the so-called transfer, and that the last clause in the option above quoted made it non-negotiable. It is insisted that these words in the option were put there for the express purpose of making it non-negotiable. The court allowed parol testimony of the Thurmonds and Allgood, tending to show that if the Thurmonds failed to make the money necessary to meet the payments on the land in controversy, of which the Thurmonds had possession, when such payments were due, or to pay "of their own means," then the option to purchase the land should become void. And regardless of the testimony, we think the language of the option makes it non-assignable. In the case of *Sims* v. *Cordele Ice Co.*, 119 *Ga.* 597 (46 S. E. 841), this court held that "A contract right to purchase designated property, within a given time, at a stipulated price, upon the credit of the person owning such right, is not assignable." In delivering the opinion of the court, Fish, P. J., said (p. 600) : "S. R. Sims could not be compelled to sell his property upon such terms to any one else but the person to whom he had contracted to thus sell it. He had the right to decide for himself to whom he would sell his property on a credit, and could not be forced to sell it to any one else. . . Many cases may be found which hold that a right to purchase given property for a stipulated sum, to be paid when the property is purchased, is assignable; but we know of no case in which it has been held that one who has acquired the right to purchase another's property, at a designated price, upon his own credit, can, without the consent of the owner of the property, transfer such right to a third person, so as to entitle the transferee to purchase the property upon the same terms and upon his credit." The principle decided in the *Sims* case is controlling in the case at bar; and the court did not err in directing a verdict for the defendant.

*Judgment affirmed. All the Justices concur.*